# UNION PACIFIC RAILWAY COMPANY *v.* McALPINE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 128. Argued December 14, 15, 1888. — Decided January 28, 1889.

In October, 1874, Mrs. M. owned a tract of land consisting of four acres on Kansas River in the town of Wyandotte, Kansas, called Ferry tract, and the Kansas Pacific Railway Company owned a tract of $25\frac{1}{4}$ acres lying north of Wyandotte. In that year negotiations were opened between her and the company for an exchange of $2\frac{70}{100}$ acres of the Ferry tract, valued at $2000, for the $25\frac{1}{4}$-acre tract, valued at $1500, Mrs. M. offering to take for the difference in value a quarter section of land estimated at $3 an acre. Negotiations for the exchange were had between Mrs. M. and officers of that company. On February 26, 1878, the president of the company informed its general superintendent, in substance, that the exchange would be made, and directed him to proceed with the matter. The superintendent turned the matter over to the attorney of the company, who acquainted Mrs. M. with the conclusion. She, considering the proposition for an exchange of lands accepted, took possession of the $25\frac{1}{4}$ acre tract with her husband, and made valuable improvements upon it, and has remained in possession ever since. The railway company, who had previously been permitted to lay a track across the land for temporary use, took possession of the $2\frac{70}{100}$ acres and made improvements thereon. In June, 1878, at a meeting of the directors of the company, the president presented a form of deed to Mrs. M. of $25\frac{1}{4}$ acres in exchange for the $2\frac{70}{100}$ acres at the landing, and asked for instructions. It was then resolved that an exchange of said lands be made and the deed executed to Mrs. M. whenever the land to be conveyed by her was released from a tax claim thereon. A deed from her and her husband of the $2\frac{70}{100}$ acres, had previously been executed to the company and sent to its officers. After this resolution of the board, proceedings were taken by her for the release of the tax claim mentioned in it, which was accomplished, under the advice of the attorney of the company, by purchasing

in the property upon the sale made for such alleged tax. A deed was then demanded of the company for the 25¼-acre tract, and being refused, the present suit was brought for the enforcement of the contract. On the 24th of January, 1880, the Kansas Pacific Railway Company had become consolidated with the Denver Pacific Railway and Telegraph Company, and the Union Pacific Railway Company, under the name of the latter. By the articles of consolidation all the property of the constituent companies was conveyed to the new company, with a declaration that the assignment and transfer were made "subject to all liens, charges and equities pertaining thereto." Previous to this transfer and consolidation, and in May, 1879, a mortgage was made by the Kansas Pacific Company of its property, including the 25½-acre tract, to Gould and Sage as trustees; *Held,*.

(1). That the resolution of the Board of Directors of June 28, 1878, was a ratification in part of the negotiations for the exchange of the two tracts, and Mrs. M. having accepted this action, it is not valid ground of objection by the Kansas Pacific Company to the enforcement of the contract that it called for less than was originally agreed upon.

(2) That the taking possession of the tracts by the parties pursuant to the contract and continuing in possession and making improvements thereon constitute part performance of such contract sufficient to take it out of the Statute of Frauds and authorize a decree for full performance.

(3) That the obligation of the Kansas Pacific Company to execute a conveyance to Mrs. M. passed to the defendant company upon the consolidation mentioned and the transfer to it of the property of the Kansas Pacific Company.

(4) That the trustees under the mortgage of 1879 took the property with notice of the rights of Mrs. M., and subject to their enforcement.

IN EQUITY. For the specific performance of a contract to convey real estate. Decree for complainants. Respondent appealed. The case is stated in the opinion.

*Mr. J. M. Wilson* for appellant. *Mr. J. P. Usher, Mr. John F. Dillon* and *Mr. A. L. Williams* filed briefs for same.

*Mr. William M. Springer* and *Mr. James M. Mason* (with whom was *Mr. John W. Day* on the brief) for appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes from the Circuit Court of the United States for the District of Kansas. It is a suit for the specific per-

formance of a contract for the exchange of lands in the State of Kansas between Maria W. McAlpine, one of the complainants below and appellees here, and the Kansas Pacific Railway Company, alleged to have been made in 1878, her contention being that the defendant, the Union Pacific Railway Company, has succeeded not only to the property but to the obligations of that company. The decree of the Circuit Court was in favor of the complainants, and the case is brought here on the appeal of the defendants. *McAlpine* v. *Union Pacific Railway Co.*, 23 Fed. Rep. 168.

Nearly every fact essential to the maintenance of the suit is controverted, and in relation to many of the facts there is a perplexing conflict of evidence. It would serve no useful purpose to detail and discuss the mass of testimony contained in the record and show, out of the varying statements of witnesses, the attendant circumstances and the accompanying documents, where the preponderance of evidence rests with respect to any essential matter. We shall briefly state the facts which seem to us to be sufficiently established. It appears that the town of Wyandotte, in Kansas, is situated at the junction of the Kansas and Missouri rivers, and that on the 16th of September, 1861, the title to a small tract of land bordering on the north side of the Kansas River, within the town, being four acres in extent, and known as the "Ferry Tract," was vested in one Isaiah Walker under a patent of the United States. This tract afforded an available and convenient landing from steamboats. On the 21st of October, 1874, the title to it passed to Maria W. McAlpine by conveyance of the sheriff of Wyandotte County, under a decree of the District Court of the Tenth Judicial District of Kansas, rendered in a partition suit between her and parties claiming interest therein. The other complainant and appellee, Nicholas McAlpine, is the husband of Maria. In the early part of 1878, negotiations were had between the McAlpines and officers of the Kansas Pacific Railway Company, for the exchange of two acres and seventy one-hundredths of an acre of this Ferry tract for a parcel of land consisting of twenty-five acres and a quarter, lying north of Wyandotte, then owned by that

company. The two acres and seventy one-hundredths of an acre were valued by the McAlpines at $2000. The 25¼-acre tract held by the railway company was valued at $1500. For the difference in value the McAlpines offered to take a quarter section of land in Pottawatomie County, Kansas, which was estimated to be worth three dollars an acre. The negotiations were had with the company through its president, its general superintendent, and its attorney at law. It does not appear that any of these officers, except its president, Robert E. Carr, acted upon any previous authority conferred by the Board of Directors. All its members, however, were aware of the negotiations, and no one expressed any doubt that what was done in the matter would be finally approved by the Board. Mr. Carr testified that whatever he did in regard to the exchange as an officer of the railway company was done after consultation and advice with the Board of Directors; and that in this case he also consulted with the receiver. The railway company was then and for some period subsequently, in the hands of a receiver appointed in a foreclosure suit apparently of a friendly character, resulting in a decree extending the time for paying the amount due. The rights of the receiver were merely temporary, the title of the property remaining in the railway company, and on the termination of the receivership possession was restored to the company. Mr. Carr, after becoming acquainted with the terms of the proposed exchange, and acting upon the advice of the Board, on the 26th of February, 1878, sent to the general superintendent of the company the following communication:

"KANSAS PACIFIC RAILWAY,

"OFFICE OF GENERAL MANAGER FOR THE RECEIVERS.

"ST. LOUIS, *Feb.* 26, 1878.

"T. F. OAKES, Gen. Supt.

"DEAR SIR: Respecting the settlement for right of way with McAlpine, I beg to say you can settle with him on the basis of exchanging the lot of land belonging to company above Wyandotte, about 25 acres, for his Walker Ferry tract.

That we will also, in addition, give him one hundred and sixty acres of land, to be selected by him out of the lands of the company, the appraised price of which does not exceed five hundred dollars; back taxes and claims on all to be satisfactorily cleared up.

     " Respectfully, '     ROBERT E. CARR."

 This communication was turned over by the general superintendent to the attorney of the company, with an indorsement over his initials, " Go ahead with this."

 The McAlpines, considering the proposition for an exchange of lands as accepted, and the terms of the contract as settled, on the 25th of March following executed to the Kansas Pacific Railway Company a deed in due form of the two acres and seventy one-hundredths of an acre. In this deed Isaiah Walker and wife united, and it was then transmitted to the officers of the railway company for delivery. Soon afterwards, the McAlpines went into possession of the 25¼-acre tract, and have remained in its possession ever since. They put valuable improvements upon the land, and there are now many buildings upon it. The railway company had been permitted by the McAlpines and their predecessors, to lay a railroad across the Ferry tract for temporary use in transporting railroad material from steamboats to its main line. After the acceptance of the terms of the proposed exchange, the railway company took possession of the entire tract, that is, of the two acres and seventy one-hundredths of an acre, and kept and used it until the consolidation of the company with the defendant, when its possession and use passed to the latter, which has ever since held it. But it was not until the 28th of June, 1878, that the Board formally acted upon the subject. What was then done appears from the following extract from the minutes of its meeting :

 " Pursuant to call of the president, the Board of Directors of the Kansas Pacific Railway Co. met at the office of the company, in St. Louis, on Friday, June 28th, instant, at 2 P.M.

 " Present : Messrs. Perry, Meier, Edgell, Treadway, Edgerton and President Carr.

."The president presented a form of deed to Maria W. McAlpine to 25¼ acres of land in Wyandotte County in exchange for two and seventy hundredths acres of land at the tie landing in Wyandotte County, and asked for instructions in regard to signing the same.

"On motion of Mr. Meier, and seconded by Mr. Perry, it was resolved that the exchange of said lands be made, reserving the right of way therein, and the deed of the company be properly executed and delivered to Maria W. McAlpine whenever the land to be conveyed by her has been released from the tax claim thereon and a proper deed made for the same is delivered."

It appears that, pending the negotiations and before this action of the Board, it was discovered that a small part of the Ferry tract was clouded by a tax claim of some kind, and it is to the release of that claim that reference is made in the proceedings of the Board. The McAlpines were informed by the attorney of the company of its resolution. In accordance with its condition they proceeded to take measures to remove the tax claim, and they did so, upon the advice of the attorney, by bidding in the property at the sale made for such tax, which subjected them to an expenditure of several hundred dollars. They then notified the attorney of the removal of the claim, and called upon the company to execute its deed to them of the 25¼-acre tract in accordance with the contract. This the company postponed doing from time to time, under various pretences and pretexts, apparently in the expectation of securing by delay some undue advantage over the McAlpines. In the meantime, the Kansas Pacific Company became united and consolidated with the Denver Pacific Railway and Telegraph Company, and the Union Pacific Railway Company, under the name of the latter, which sets up against the claim of the McAlpines that the alleged contract for an exchange of lands was never made with the Kansas Pacific Company, or, if made, that nothing was ever done under it to take it out of the Statute of Frauds; and that even if such were the case, the contract was not enforceable against the defendant, the Union Pacific Company. We do not state the several objec-

tions urged against the demand of the complainants in the language of the appellants, but we give the substance of them, or at least of such of them as we deem of sufficient importance to notice.

Some criticism is made by the appellants upon the form of the allegations respecting the contract with the Kansas Pacific Company. It is alleged that such contract was with the defendant in 1878, acting under the name and style of the Kansas Pacific Railway Company, when the defendant company was not organized until 1880. It is true, the form of the allegation is not apt or even accurate, but it does not appear to have misled the defendant in any respect, and the case was heard on its merits, as though the allegations had followed the order in which the proceedings were taken by the original company, afterwards merged and consolidated into the defendant company. We do not, therefore, allow the criticism to affect our decision. It was not made in the court below, where objections to the form of averments should be presented, if they are to be considered here.

We agree with the Circuit Court that the record of the Board of Directors of the Kansas Pacific Railway Company of the 28th of June, 1878, measures and fixes the limits of the liabilities and obligations of that company. It shows a ratification of the past negotiations between the McAlpines and the company for the exchange of the two acres and seventy one-hundredths of an acre of the Ferry tract for the $25\frac{1}{4}$-acre tract. It does not, it is true, make any mention of the 160 acres in Pottawatomie County, but of that land we need not concern ourselves, for as to it the bill was dismissed and no appeal was taken by the complainants. If they were willing to accept a deed of the $25\frac{1}{4}$-acre tract in exchange for the two acres and seventy one-hundredths of an acre of the Ferry tract, it did not lie with the railway company to complain that they did not make a claim for the other land. It certainly was no ground for the company to repudiate the contract as ratified, that it called for less than was originally agreed upon. That land being left out of consideration, we have the respective parcels to be exchanged sufficiently identified, and from other docu-

ments they can be described by metes and bounds. That is certain, as the maxim obtains, which can be rendered certain. And if the contract, for want of the signature of the corporation or of its lawfully authorized agents, is not strictly within the Statute of Frauds, yet the possession taken of the several parcels — of the $25\frac{1}{4}$-acre tract by the McAlpines, and of the $2\frac{70}{100}$-acre tract by the railway company — in pursuance of such contract, and continued ever since, and their expenditures for buildings and other improvements upon the respective parcels constitute a part performance sufficient to take the contract out of the operation of the statute, and authorize a decree for its full performance. The fact that possession was taken before the ratification of the Board in June, 1878, did not impair the effect of that possession as an act of part performance. The taking possession of, that is, exercising control and dominion over the property, was referable entirely to the contract. It was an act done with respect to the property by the consent of the vendor, which would not have been done if there had been no contract. This consent gave to the act, which would otherwise have been tortious, its character as one of part performance.

It is not perceived how the effect of this possession, taken in behalf of Mrs. McAlpine — for it was in her interest alone that the exchange was made, the title to the Ferry tract being in her and not in her husband — is destroyed or weakened as an act of part performance by the fact that, in June of the previous year, Mr. McAlpine and one Arthur had taken a lease of the $25\frac{1}{4}$-acre tract until January 1, 1878. It does not appear that Mr. McAlpine remained upon the land after the termination of the lease, which was before negotiations were opened for its acquisition, by exchanging for it the property of Mrs. McAlpine. If Arthur remained upon the premises after such termination, he surrendered and left them when informed that the contract for the exchange had been made. It is plain, in our judgment, that the subsequent possession of Mrs. McAlpine, to whom the deed of the company was to be executed, was taken under that contract, and that the improvements were made on the faith that in pursuance of it the title would be conveyed to her.

Nor do we perceive that the obligation of the contract was released or impaired by the fact that when in April, 1880, the superintendent notified Mr. McAlpine that the company would not make the exchange, Mrs. McAlpine wrote to him asking when the company would be ready to remove its track from her land and come to a settlement for its use. That inquiry drew from the superintendent a request that she would "delay conclusions" until he could confer with New York parties. Her letter referred to the contract made two years before, and stated that then an exchange of lands was considered desirable by the railway people, as they had been using her land for several years, for a steamboat landing and wharf, and were still using it, without making any compensation for its use. The inquiry which followed was intended as an intimation of what would be expected if the contract were abandoned, not as a consent to such abandonment; but it is seized hold of and put forth by the defendant as an admission that no contract was ever concluded. It does not, in our judgment, justify any such inference. Nothing was ever heard from the New York parties, nor does it appear that any communication was ever made to them on the subject. And Mrs. McAlpine afterwards called upon the company to execute its deed pursuant to its contract. It was not until some time in December, 1880, that the general superintendent informed her that the contract for the exchange of the $25\frac{1}{4}$-acre tract would not be carried out under any circumstances, but that he would take the responsibility of paying her $1500 for her land as an amicable settlement. In January, 1881, the present suit was commenced; and if, under the pretexts put forth by the company, the performance of the contract could be defeated, a great wrong would be done to the complainants. Their possession, instead of being lawful, might be treated as a continuing trespass upon the property of the railway company; and the improvements placed upon the land, and the consequent increase in its value, would be lost to them. It is the wrong and hardship which would be done to a purchaser under these circumstances, by allowing the vendor to escape from the obligations of his contract for the want of some formality in its execution, that con

stitute the ground of the jurisdiction of courts of equity in such cases to compel performance. A principle of common justice forbids that one shall be permitted to lead another to act upon a contract of purchase with him, and incur expenses by reason of it, and then, upon some pretext of a defect in a matter of form, refuse compliance with its provisions, and thus deprive the purchaser of the benefit of his labor and expenditures. Courts of equity in such cases interfere and compel the vendor to keep his engagements. *Lester* v. *Foxcroft*, 1 Colles Parl. Cas. 108; *Wills* v. *Stradling*, 3 Ves. 378, 381; *Gregory* v. *Mighell*, 18 Ves. 328; *Parkhurst* v. *Van Cortland*, 14 Johns. 15.

The obligation of the Kansas Pacific Railway Company to execute the contract by a conveyance of the 25¼-acre tract to the McAlpines passed with the property to the defendant, the Union Pacific Railway Company, upon the consolidation of the two companies under the latter name. Whenever property charged with a trust is conveyed to a third party with notice, he will hold it subject to that trust, which he may be compelled to perform equally with the former owner. The vendee in that case stands in the place of such owner. *Taylor* v. *Stibbert*, 2 Ves. Jr. 437, 439; *Dunbar* v. *Tredennick*, 2 Ball & Beatty, 304, 319. Without reference, therefore, to the articles of union and consolidation, the Union Pacific Railway Company would, on general principles, be held to complete the contract made with the Kansas Pacific Company; and the articles in specific terms recognize this obligation. The union and consolidation embraced three companies, the Denver Pacific Railway and Telegraph Company, as well as the Kansas Pacific Company and the Union Pacific Company. By the 8th article, the three companies transferred to the consolidated company all their rights, privileges, exemptions and franchises, and all their property, real, personal and mixed, with the appurtenances; with a declaration that the assignment and transfer were made "subject to all liens, charges and equities pertaining thereto." The tenth article exempted the new company from any separate or individual liability for the outstanding debts, obligations or liabilities of the respective constituent companies; but it also provided that nothing there-

in contained should "prevent any valid debt, obligation or liability of either constituent company from being enforced against the property of the proper constituent company," which by force of the articles became the property of the consolidated company. The property transferred, which included the 25¼-acre tract, thus passed to the new company, subject to all charges, liens and equities to which it was before subject, and the obligation of the Kansas Pacific Company to make a conveyance of that tract devolved upon the defendant.

The same principle applies also to the mortgage executed in 1879 by the Kansas Pacific Company to Gould and Sage, as trustees covering the 25¼-acre tract. At that time the order of June 28, 1878, was a matter of record in the books of the Kansas Pacific Company, and the McAlpines were in possession of the tract. Under these circumstances, it may be claimed that the property was taken by the trustees with notice of the rights of the complainants, and, therefore, subject to their enforcement. It is sufficient that the Union Pacific Company cannot set up that mortgage as a release from its obligation to make a conveyance in execution of the contract with the McAlpines.

*Decree affirmed.*