RAYBESTOS–MANHATTAN, Inc., v. ASBESTOS TEXTILE CO. et al.

No. 2996.

Circuit Court of Appeals, First Circuit.

Oct. 16, 1935.

BINGHAM, Circuit Judge, dissenting.

————◇————

Edward K. Nicholson, of Bridgeport, Conn., for appellant.

Harry Olins, of Boston, Mass. (William M. Silverman, of Boston, Mass., Jack Lewis Kraus, II., of New York City, and Hermanson & Silverman, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

The question is whether Raybestos-Manhattan, Inc., may prove against the Asbestos Textile Company, bankrupt, a claim on a promissory note for $25,000 given by the bankrupt to the claimant for an advance of that amount. The referee held that the claimant was not entitled to prove the claim and the District Judge affirmed the referee's order. The claimant has appealed. The complicated facts are stated by the referee and it is unnecessary to review them. We shall refer only to such as are involved in the points now in controversy.

The first point is whether the "Memorandum of Proposal made by Raybestos-Manhattan, Inc., to Arnold W. Kochler" was intended as an offer of a present contract when accepted by Kochler (or Kohler), or only as a basis for negotiations to be embodied in a later contract. The referee found, in effect, that it was intended as the offer of a present contract and that upon Koehler's acceptance of it a contract resulted. This finding was confirmed by the District Judge. The question presented was one of fact. While neither view of the matter is free from difficulties, we think that the weight of the evidence is decidedly in favor of the referee's conclusion. We are by no means prepared to say that he was clearly wrong. At the time when the memorandum of proposal was made, there was an outstanding contract between the Asbestos Company and the Borg & Beck Company looking to the acquisition of the former by the latter. In that situation Raybestos-Manhattan, Inc. (the claimant), and the Borg & Beck Company entered into negotiations for closer business relations between them. These negotiations contemplated the cancellation of the contract between the Asbestos Company and Borg & Beck Company just referred to. Raybestos-Manhattan and Borg & Beck were co-operating—the trustee says colluding—to secure that result. Con-

ferences between the three parties concerned, i. e., Asbestos Company, Borg & Beck Company, and Raybestos-Manhattan, were in progress practically simultaneously. The arrangement made, while not in form tripartite, was practically so. It called for immediate action by the Asbestos Company canceling its contract with Borg & Beck (thereby leaving the latter company free to deal with Raybestos-Manhattan), and also in certain other particulars. Koehler promptly performed these requirements which were explicitly stated in the first two clauses of the "Memorandum." His action in so doing was known to Raybestos-Manhattan, and was for its benefit. The most reasonable view of what occurred is that he acted in accordance with what he and Raybestos-Manhattan understood to be an existing contract created by his acceptance of the "Memorandum of Proposal." The "Memorandum" itself obligates Raybestos-Manhattan to make the first loan of $25,000 on the performance by Koehler, not of the entire agreement, but only of the first two clauses, which, as has been said, required immediate action by Koehler and his associates.

■ The next point made for the claimant is that even if it was the intent of the parties to enter into a contract, its officers who attempted to act for it in making the contract were not authorized to do so. The claimant's president and other directors of that company participated in the negotiations which resulted in the memorandum of proposal. Whether they constituted a majority of the board of directors does not appear. At a meeting of the board held about a month later, the board voted, in substance, that it was inadvisable for the company to enter into such a contract as that contained in the memorandum of proposal. In the meantime, however, as has already been stated, Koehler and his associates had gone ahead on the assumption that a contract had been made and, relying on it, had canceled the contracts between the Asbestos Company and the Borg & Beck Company and exchanged mutual releases with that company, thereby relinquishing what might have been substantial rights; they had also given representatives of the claimant free access to their books, to their customers' lists, to their costs, etc., and on the financial side of their business had, according to their evidence, conducted it under instructions given by representatives of Raybestos-Manhattan—all this having been done with the knowledge and concurrence of the principal officers of the latter company.

The Raybestos-Manhattan Company having through its principal officers entered into what purported to be a contract with the Asbestos Textile Company and having accepted for its own benefit partial performance of that contract by the Asbestos Company in matters as to which the Asbestos Company cannot now be put in statu quo, is on the plainest principles estopped from setting up any informality or lack of authority on the part of its officers—if such lack of authority actually existed—to enter into the contract. Daniels v. Tearney, 102 U. S. 415, 26 L. Ed. 187; Union Pac. Ry. Co. v. McAlpine, 129 U. S. 305, 9 S. Ct. 286, 32 L. Ed. 673. We therefore hold that the claimant was bound by the contract contained in the memorandum of proposal. It is unnecessary to determine whether the contract was originally authorized, nor whether, as urged by the trustee, Raybestos-Manhattan, Inc., being a competitor of the Asbestos Company, deliberately laid a trap to break up its business relations with Borg & Beck Company.

■ A further point made by the claimant is that, even if a present contract of binding character was made, the Asbestos Textile Company was not a party to it; that the contract was between the claimant and Koehler personally. The proposal runs to Koehler. In the negotiations Koehler was, however, acting, not only for himself, but also as agent for his associates and his corporation. We have no doubt that all parties so understood the matter. The Asbestos Textile Company was interested in the contract because under its terms Raybestos-Manhattan was to make advances to it for working capital, and it was to assent to the cancellation of its contract with the Borg & Beck Company dated October 30, 1930. We do not doubt that the Asbestos Company was, legally speaking, a party to the contract in question.

■ The memorandum of proposal provided that:

"Upon compliance by said Koehler with the requirements of paragraphs 1 and 2 hereof, and as a consideration therefor, Raybestos Manhattan will advance to Asbestos Textile Company, the sum of Twenty-five Thousand Dollars, to be used for working capital and for payment toward the reduction of overdue current accounts.

and an additional amount of $25,000 in case same becomes necessary for working ca$_x$ital prior to Sept. 1, 1931, in the judgment of the Board of Directors of said company, which advances shall be evidenced by the promissory notes of said Asbestos Textile Company maturing not earlier than other notes of the company."

On July 17, 1931, Koehler having complied with the requirements of paragraphs 1 and 2 of the contract, Raybestos-Manhattan advanced to the Asbestos Company the $25,000 here in question, and received for this advance a demand note signed by the Asbestos Company dated July 16, 1931. Koehler appears to have made some objections in giving the note. The referee finds on this point as follows:

"I find specifically that the terms outlined in the memorandum under paragraphs 1 and 2 (see Exhibit 10), as well as these other later added terms just referred to (having all been complied with by Koehler and the Asbestos Company) the Raybestos Company, in accordance with its agreement, the terms of which are covered by section 6 of the agreement in Exhibit 10, did advance to Asbestos Company the sum of $25,000; that this sum was paid, in accordance with the agreement, stated in said memorandum and that it was paid to Raybestos Company on July 17, 1932; that a note was given at the same time by Asbestos Company to Raybestos Company; that the giving of this note was a condition imposed by the Raybestos Company at the time they gave the money, on the express understanding that it was for the purpose of giving the Raybestos Company protection in the event that the Asbestos Company did not carry out the terms of its agreement."

Raybestos-Manhattan subsequently refused to make any further advances to the Asbestos Company, although requested to do so; and the latter became bankrupt.

The referee and the District Judge found and held that the advance of $25,000, although evidenced by the note in question, was made under the contract contained in the memorandum of proposal; that Raybestos-Manhattan broke that contract by its refusal to make any further advance; and that having broken the contract it could not sue for advances made under the contract nor prove in bankruptcy against the Asbestos Company for such advances.

The contract did not require Raybestos-Manhattan to make the second advance of $25,000 to the Asbestos Company unless such additional advance became "necessary for working capital prior to September 1, 1931, in the judgment of the Board of Directors of said company." There is a difference of opinion among the members of the court whether "said company" refers to the claimant or to the Asbestos Company. Whichever view be taken, the result is the same. If Raybestos-Manhattan Company is referred to, this provision requires its directors to exercise their honest judgment as to whether a further advance by it to the Asbestos Company for working capital was necessary. They never exercised any such judgment, nor recognized any liability under the contract. This was a clear breach of it. Raybestos-Manhattan having broken the contract was not entitled to maintain suit upon it; and the giving of the note by the Asbestos Company was not intended to and did not, under the circumstances disclosed, create an independent right of action in favor of Raybestos-Manhattan on which a proof of claim could be based. If, on the other hand, the words under discussion refer to the Asbestos Company, then the memorandum agreement was clearly modified by later arrangement. Mr. Koehler, president of the Asbestos Company, asked Mr. Simpson, president of Raybestos-Manhattan, whom he wanted for directors on the Asbestos Company board, of which the contract provided that a majority should be agreeable to the Raybestos Company before any advances were made. Mr. Simpson replied, "No, not at this time," and said that he was going to arrange to have one of his men, suggesting Mr. Macy, make periodical visits to the office of the Asbestos Company, probably twice a week, and check up the disbursements of the $50,000 which they were going to advance to the Asbestos Textile Company as working capital. Macy's work was evidently a substitution for a representation of Raybestos-Manhattan on the board of the Asbestos Company. Macy or Dunn (assistant treasurer of Raybestos-Manhattan) made periodical visits to the Asbestos Company and checked up their disbursements in accordance with this new arrangement. Koehler testified that there was a meeting with Dunn and Macy in July, 1931, at which time the books were checked to see whether $50,000 would be "enough to

638

carry us through until the first of September." Mr. Dunn's report of the cash position of the company on July 1st corroborates the claim of the Asbestos Company that it was understood another advance of $25,000 was to be made by Raybestos-Manhattan before the 1st of September, if necessary to carry them through until that date. There can be no question but that Mr. Simpson and the other officers of Raybestos-Manhattan were in close touch with the affairs of the Asbestos Company during this period and were perfectly aware of the absolute dependence of the Asbestos Company on an additional advance in order to keep going; and their attitude was one of delay and putting off the demands of the Asbestos Company. The referee found "that the whole history of such relations (between the Asbestos Company and Raybestos-Manhattan) shows definitely an evasive attitude on the part of Raybestos-Manhattan and a failure to carry out the terms of its agreement which was explained by one of its witnesses as due to the depressed condition of business in general." His concluding finding was, "in my opinion the claimant cannot now come into this court and prove its claim for the $25,-000 paid to Asbestos Company on July 17. A contract breached by the claimant cannot serve as a basis for proof of claim for moneys paid in partial performance of such agreement."

It follows that the decree appealed from must be affirmed.

The decree of the District Court is affirmed, with costs to the appellees.

BINGHAM, Circuit Judge, dissents.