Ronald A. ALIX

v.

Angelina ALIX.

No. 83–80–Appeal.

Supreme Court of Rhode Island.

Aug. 21, 1985.

Thomas G. Hetherington, Hetherington & Hetherington, Pawtucket, for plaintiff.

Michael F. Horan, Pawtucket, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the plaintiff from a judgment entered in the Superior Court awarding defendant a statutory life interest in real property located at 395 Pleasant Street, Pawtucket, Rhode Island. We reverse the judgment of the Superior Court.

The essential facts in this case were not disputed by the parties and were set forth in an agreed statement of facts filed with the Superior Court on October 18, 1982. The facts are as follows:

"1. Jean F. Alix and Angelina Alix were married on March 4, 1933.

"2. A petition for divorce was filed by Angelina Alix in 1973.

"3. Jean F. Alix and Angelina Alix entered into a property settlement agreement dated September 19, 1973 * * *.

"4. Said property settlement agreement was approved by the Family Court and incorporated by reference but not merged into an Interlocutory Decree of the Family Court. Both parties substantially complied with the terms of the property settlement agreement. Said agreement did not specifically mention property located at 395 Pleasant Street[,] Pawtucket, Rhode Island.

"5. A [f]inal decree was never entered in the matter.

"6. Jean F. Alix died on February 21, 1980 owning real property located on 395 Pleasant Street, Pawtucket, R.I."

Subsequent to Jean F. Alix's death, plaintiff, Ronald A. Alix (hereinafter son), one of the sons of Jean and Angelina Alix, filed a complaint for declaratory judgment in the Superior Court. In that complaint, son stated that Angelina Alix (wife) and Jean F. Alix (sometimes hereinafter referred to as husband) had entered into a property-settlement agreement arising out of a petition for divorce filed by wife against husband. The son claimed that the property-settlement agreement was intended "to determine 'all questions of alimony and property rights'" between wife and husband. The son further asserts that as a result of this agreement, although wife chose not to obtain a final decree in her divorce action, she has no claim to property owned by Jean F. Alix at the time of his death. The son argues that the property located at 395 Pleasant Street in the city of Pawtucket should therefore pass to the devisee indicated in Jean F. Alix's will, which will devises the property in question to son.

In wife's answer, filed May 12, 1982, she claimed that the effectiveness of the property-settlement agreement was contingent upon the entering of a final decree in the divorce action. Therefore, because no final decree was ever entered, the wife "maintained and preserved all her statutory and

legal rights and interest in * * * Jean F. Alix's estate." Accordingly, the wife claimed a statutory life interest in the real property owned by Jean F. Alix at the time of his death, which included the property located at 395 Pleasant Street in Pawtucket.

Following the filing of the agreed statement of facts and the filing by both parties of memoranda in support of their arguments, the Superior Court rendered a decision in the case, the rescript of which was filed in the Superior Court on January 19, 1983. In his decision, the trial justice held that the property-settlement agreement did not nullify wife's statutory share of Jean F. Alix's estate because the effectiveness of the agreement depended upon the entry of a final decree of divorce. As the trial justice stated in his decision:

"[T]he death of Jean Alix abated the divorce action. The Family Court, as the Supreme Court has held, has no jurisdiction to continue a divorce action after the death of one of the parties. It would therefore follow that a property settlement agreement incorporated into the interlocutory decree and expressly conditioned upon the entry of a final decree of divorce is ancillary to the court's divorce jurisdiction and must abate when the divorce action itself abates. The matrimonial bond was not severed by the interlocutory decree and therefore the relationship of husband and wife remained in full force up until the time of the husband's death. Because of this, Angelina Alix was the surviving spouse of Jean Alix at the time of his decease and any power of the Family Court to enforce the property settlement agreement abated upon Jean Alix's death."

Subsequent to the entry of judgment for wife by the trial justice on January 25, 1983, the son filed a notice of appeal to this court on February 2, 1983.

■ As we have often stated, the findings of fact made by a trial justice sitting without a jury are entitled to great weight and will not be set aside unless the trial justice has overlooked or misconceived material evidence or is otherwise clearly wrong. *Joni Auto Rentals, Inc. v. Weir Auto Sales, Inc.,* — R.I. —, —, 491 A.2d 328, 330 (1985); *Proffitt v. Ricci,* — R.I. —, —, 463 A.2d 514, 517 (1983); *Altieri v. Dolan,* — R.I. —, —, 423 A.2d 482, 484 (1980). The thrust of son's argument in this case is not a challenge to the findings of fact by the trial justice since all of the pertinent facts were the subject of a stipulation by the parties. The real challenge is directed to the conclusions of law reached by the trial justice on the basis of these agreed facts. The son suggests that these conclusions were erroneous. With this contention we agree.

More specifically, son raises three issues on appeal: (1) that the property-settlement agreement is an independent contract binding husband and wife and that no act or death of either party can diminish its validity, (2) that wife had contracted away her right to a statutory interest in Jean F. Alix's estate even though the property-settlement agreement was not incorporated into a final decree, and (3) that wife is estopped from refusing to fulfill her obligations under the contract even though she has accepted all the benefits that accrued to her under that contract (property-settlement agreement) from 1973 to 1980. It is this third issue upon which we base our reversal of the trial court's judgment.

■ In the instant case, principles applicable to divorce actions must, if possible, be harmonized with traditional notions of contract law. We recognize and reaffirm that our cases hold that parties to a divorce action remain as husband and wife until the entry of the final decree of divorce, *Levada v. Levada,* 116 R.I. 600, 604, 359 A.2d 701, 703 (1976); *Pakuris v. Pakuris,* 95 R.I. 305, 309, 186 A.2d 719, 721 (1962), and that the death of one party prior to entry of the final decree abates the entire divorce action. *Keidel v. Keidel,* 119 R.I. 726, 729, 383 A.2d 264, 266 (1978).

In the circumstances of this case, however, application of these well-established

rules would bring about an unjust result. This is particularly true when one party to a contract receives benefits under the contract and then raises the issue of a lack of some necessary formality of execution, which defect voids the contract. In order to avoid such an injustice, basic notions of contract law may be applied to estop the party from asserting the invalidity of the contract when such invalidity arises solely as a result of that party's failure to perform the act essential to its validity.

This court has in the past, under appropriate circumstances, applied the doctrine of promissory estoppel in order to avoid an unjust result. *East Providence Credit Union v. Geremia*, 103 R.I. 597, 603, 239 A.2d 725, 728 (1968). This doctrine is defined in the Restatement (Second) *Contracts* § 90 at 242 (1981), as

"[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Promissory estoppel is distinguishable from estoppel *in pais* in that the promisee is relying to his detriment on a promise made by the promisor, rather than on a misstatement of fact. *See* 1 Williston, *Contracts* § 140 at 607–09 (3d ed. Jaeger 1957).

Although promissory estoppel was traditionally employed as a substitute for consideration in charitable subscription cases, several jurisdictions have extended its application to varied situations in which the promisee's reliance on the promise was induced, and injustice may only be avoided by enforcement of the promise. *East Providence Credit Union*, 103 R.I. at 601–02, 239 A.2d at 727–28; Calamari & Perillo,

*The Law of Contracts* § 6–8 at 211 (2d ed. 1977); 1 Williston, § 140 at 611–14.[1] We endorse this trend established by other jurisdictions of extending the application of the doctrine of promissory estoppel. We note, additionally, that if the doctrine is applicable in a situation in which consideration is lacking in a contract, then it logically follows that promissory estoppel should be applied to a case in which one of the parties has deliberately failed to perform an act necessary to the formal validity of the contract.

■ More specifically, we assert that when a necessary element of a contract is lacking as a result of one contracting party's failure to act, and that party has reaped those benefits to which he or she was entitled under the contract, he or she cannot thereafter raise the issue of the validity of the contract in order to avoid fulfilling his or her own obligations under the contract. *See City of Warwick v. Boeng Corp.*, —— R.I. ——, ——, 472 A.2d 1214, 1218 (1984). As stated succinctly by the United States Supreme Court in *Union Pacific Railway Co. v. McAlpine*, 129 U.S. 305, 314, 9 S.Ct. 286, 289, 32 L.Ed. 673, 676 (1889):

"[A] principle of common justice forbids that one shall be permitted to lead another to act upon a contract of purchase with him, and incur expenses by reason of it, and then, upon some pretext of a defect in a matter of form, refuse compliance with its provisions, and thus deprive the purchaser of the benefit of his labor and expenditures."

In the case at bar, there is no question that the property-settlement agreement itself was a valid contract between the wife and the decedent, Jean F. Alix, setting out a division of property pursuant to their

---

1. Calamari & Perillo, *The Law of Contracts* § 6–8 at 211 (2d ed. 1977), states as follows:
   "The modern trend in promissory estoppel cases is not to restrict enforcement to the types of situations listed in [the section entitled 'Traditional Approach to the Promissory Estoppel Doctrine'] but to enforce any promise which meets the requirements of promissory estoppel. Since the kinds of promises which are likely to induce reliance are as varied as human ingenuity, no exhaustive listing of the cases is possible in this context." (Footnotes omitted.)

divorce. The agreement further stated that it was subject to two conditions subsequent, namely, the approval of its provisions by the Family Court and the filing of a final decree of divorce. There is no doubt about Family Court approval of the terms of the agreement. That approval was set forth in the interlocutory decree. It is, of course, unquestioned that the decision to enter an interlocutory decree of divorce is the only point at which significant judicial attention would be given to the rights of the parties and to their property settlement. Therefore, the only act remaining to secure the validity of the property-settlement agreement was the filing of a final decree of divorce. Such a decree is entered by the court as a formal action, and that entry would be performed only on the application of wife, who was the prevailing party. Although the terms of the property settlement made its validity contingent upon the entry of a final decree of divorce, under the facts of this particular case we cannot permit wife to defeat the contract by her own failure of performance.

The wife initiated the divorce action in 1973. Pursuant to the commencement of that action, husband and wife entered into a property-settlement agreement that specifically stated that

> "in the event of the entry of a Final Decree of divorce in the action now pending * * * on the condition that the provisions hereof are approved by the [Family] Court and incorporated but not merged in substance in the Final Decree, the parties desire to agree upon all questions of alimony and property rights. If not so approved and incorporated, this agreement shall have no effect."

Beginning on the date the property-settlement agreement became effective, December 11, 1973, wife received those benefits that were to inure to her under the agreement. The wife received (1) "permanent use and legal title and possession to all of the household furniture, furnishings and effects of the parties," except for one bed, a stove, and a refrigerator; (2) the sum of $176 per month "as permanent alimony"; (3) the sum of $109.79 for prescriptions and $14 for 20 percent of wife's medical bills; and (4) attorneys fees amounting to $750. The wife continued to receive the amount of alimony specified in the agreement from 1973 until Jean F. Alix's death on February 21, 1980.

Because wife was the party who had originally brought the action for divorce, it was solely within her power as the prevailing party to obtain the final decree of divorce. General Laws 1956 (1981 Reenactment) § 15–5–23. *See Luttge v. Luttge,* 97 R.I. 309, 312, 197 A.2d 500, 502 (1964) (stating that prevailing party in a divorce action cannot be compelled to enter a final decree of divorce against his or her wishes).

■ The wife benefited from the property-settlement agreement yet failed to obtain a final decree of divorce that would have given the property-settlement agreement full force and effect after Jean F. Alix's death. She is now estopped from claiming the invalidity of the property settlement agreement. The wife cannot now move to set aside the property-settlement agreement and claim a statutory life interest in the real property owned by Jean F. Alix at the time of his death. The property at issue, 395 Pleasant Street, Pawtucket, Rhode Island, will therefore pass to son under Jean F. Alix's will.

■ In addition to the doctrine of promissory estoppel, we apply the well-established principle long recognized in equity: equity regards as done that which ought to be done. *Carpenter v. The Providence Washington Insurance Co.,* 45 U.S. (4 How.) 185, 223–24, 11 L.Ed. 931, 948 (1846); Dobbs, *Law of Remedies* § 2.3 at 34, 44 n. 24 (1973). Because the obtaining of the final decree of divorce was solely within the wife's power and because she delayed performance of the act necessary to the securing of this decree for seven years, during which time she received the benefits of the property-settlement agreement, we

shall not permit the wife to assert her failure to act in derogation of her contractual obligations. We therefore hold that the property settlement between the husband and the wife was valid and binding upon the wife and that the property located at 395 Pleasant Street, Pawtucket, is not subject to the statutory life interest asserted by the wife.

For the reasons stated, the son's appeal is hereby sustained and the judgment of the Superior Court is reversed. The papers in the case may be remanded to the Superior Court for entry of judgment consistent with this opinion.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.