Diana GOODSON

v.

George Osborn GOODSON, Jr.

No. 98–503–Appeal.

Supreme Court of Rhode Island.

Jan. 21, 2000.

Francis J. Flanagan, Newport, for Plaintiff.

Jeremy W. Howe, Newport, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before us on the appeal of the defendant, George Osborn Goodson, Jr., from an order of the Family Court that found him in contempt of a prior order of that court with respect to payments from defendant's military retirement pension to the plaintiff, Diana Goodson. This case was assigned for oral argument, wherein the parties were ordered to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the issues raised by the parties at this time.

### Facts and Procedural History

On November 28, 1988, plaintiff and defendant were granted a divorce based upon irreconcilable differences that led to the irremediable breakdown of their marriage. The final decree of the Family Court (decree) ordered that "one-half of the [d]efen-

dant's military pension be and is hereby awarded to [p]laintiff, being an assignment under [the] equitable distribution statute." A prior property settlement agreement (agreement) had been incorporated and merged into the final decree. Paragraph 13 of that agreement provided:

"The Husband agrees that Fifty (50%) percent of his gross government monthly pension will be paid to the Wife by way of allotment; and the Wife agrees that she will pay her own tax on said Pension income, and will save the Husband harmless from any liability for taxes in respect to that allotment.

"The Husband will make all efforts to effectuate the direct allotment payment to the Wife, but in view of the fact that it may take some time to effectuate the arrangements for the payment of the pension by way of allotment, then the Husband agrees that until such time as the allotment is effected, commencing with the month of February, 1988, he will pay her the sum of One Thousand Two Hundred Seventy-four ($1,274.00) Dollars as though it were one-half of his monthly gross pension—that is in lieu of the allotment payment and when the allotment payments are effectuated then the Husband will no longer make any personal payments directly to the Wife."

From 1988 through 1991, plaintiff received one-half of defendant's gross monthly pension, which amounted to $1,274, directly from defendant as provided for in the agreement. In 1991, however, plaintiff began receiving monthly payments from the government under the allotment provision of the agreement. These payments amount to 50 percent of defendant's monthly retirement pay *after* an initial deduction for federal income tax, as provided for under 10 U.S.C. § 1408(a)(4)(C) (1982), the Uniformed Services Former Spouses' Protection Act (USFSPA), as it was in effect in 1988,

when the decree was entered by the Family Court. Consequently, the amount plaintiff now receives is *less* than half of defendant's "monthly gross pension," as provided for in the decree, and plaintiff is taxed on that amount.[1] Essentially, plaintiff argues that her payment is double-taxed because federal income taxes are withheld on the amount that is due her, and she also must pay federal income taxes on the amount she actually receives.

In late 1997, plaintiff filed a motion with the Family Court seeking a declaration that the defendant is in contempt of court for failing to make the payments as provided in paragraph 13. On August 31, 1998, the Family Court issued an order finding the defendant in contempt, stating that "[t]his court does not agree that it is 'locked into' somebody else's [the military] definition of gross income as opposed to the accepted legal definition of the term when used in [a] property settlement agreement. The language in Paragraph 13 is clear." The court ordered that the defendant "pay the [p]laintiff or compensate her for the difference between what she has not received, which is the difference between the 50 percent of the actual gross income and the 50 percent of some other figure the military has determined to be gross," and that the defendant "is ordered to make up the difference immediately." The defendant has appealed.

### Issues Presented

The defendant argues that federal law, namely the USFSPA, preempts the Family Court's ability to divide his gross military pension, and therefore the trial justice erred in applying a different definition of "gross income" than provided for in the USFSPA. Because of our determination regarding this issue, we need not address the remaining issues raised by defendant.

1. The plaintiff alleges this difference amounts to approximately $265.15 monthly, and the amount that defendant has been ordered by the Family Court to pay plaintiff to make up the difference since that time is reported by defendant to be in excess of $30,000.

## Standard of Review

■ It is well settled that "the findings of fact made by a trial justice sitting without a jury are entitled to great weight and will not be set aside unless the trial justice has overlooked or misconceived material evidence or is otherwise clearly wrong." *Alix v. Alix*, 497 A.2d 18, 20 (R.I.1985).

## Discussion

■ The issue raised by defendant in this case involves the ability of the Family Court of this state to freely divide military pensions, which are creations of the federal government. For us to address this issue, we must first examine the jurisprudence of federal law concerning the division of military pensions.

Before 1981, there was uncertainty among the states about whether state courts were preempted from considering military retirement pensions as marital property for the purpose of division upon divorce. In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court addressed this concern, holding that under the Supremacy Clause in Article VI of the United States Constitution, states were powerless to divide federal military benefits. Unfortunately, this holding resulted in an inequity to many former military spouses whereby they were not able to receive a fair portion of the marital property earned during the course of the marital relationship, sometimes at great personal sacrifice.

To remedy this inequity, Congress enacted the USFSPA, which authorized state courts to divide military retirement pensions to the extent of the service member's "disposable retired or retainer pay." Section 1408(e)(1) of the USFSPA provides that "[t]he total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay." The definition of "disposable retired or retainer pay" under the USFSPA is contained in 10 U.S.C. § 1408(a)(4):

> " 'Disposable retired or retainer pay' means the total monthly retired or retainer pay to which a member is entitled less amounts which—
>
> * * *
>
> (C) *are properly withheld for Federal, State, or local income tax purposes,* if the withholding of such amounts is authorized or required by law and to the extent such amounts withheld are not greater than would be authorized if such member claimed all dependents to which he was entitled." (Emphasis added.)

Although much of the inequity brought about by *McCarty* had been abolished by the enactment of USFSPA, the act's limitations on the divisibility of military retirement pay avoided a total reversion to the states of the ability to divide retirement pay. The major limitation that the states may only divide "disposable retirement pay"—not *gross* retirement pay—resulted in a different inequity in which the military spouse is essentially double-taxed on his or her portion of the military pension because the service member is initially taxed on the gross pay prior to the distribution to the spouse, and the spouse must then pay income tax on that amount.[2]

---

**2.** Congress amended USFSPA in 1990 to provide that payments made to a former spouse will not be considered the retired pay of the service member, and therefore, taxes will only be withheld from the individual who is receiving the pay directly from the government; additionally, the definition of "disposable retired or retainer pay" was amended to not include deductions for federal, state, or local taxes. *Amendments to the Uniformed Services Former Spouses' Protection Act,* Pub.L. No. 101–510, §§ 555(c) and 555(b)(3), 104 Stat. 1485, 1569 (1990).

The language in the amendments is clear in that it is applicable only with "respect to divorces, dissolutions of marriage, annulments, and legal separations that become effective after the end of the 90–day period beginning on the date of the enactment of this Act." *Amendments,* Pub.L. No. 101–510, § 555(e) (1990). Because the decree, entered November 28, 1988, became effective before

■ Following the initial enactment of USFSPA, there arose a question concerning the extent to which USFSPA had resurrected the power of state courts to divide military retirement benefits incident to a divorce. In *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the United States Supreme Court stated that "[b]ecause domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area," but that the USFSPA was "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Id.* at 587, 109 S.Ct. at 2028, 104 L.Ed.2d at 684. The Court went on to hold that the USFSPA revived the power of the state courts only to the extent of permitting them to divide, incident to a divorce, the service member's " 'disposable retired or retainer pay'." *Id.* at 588–89, 109 S.Ct. at 2031, 104 L.Ed.2d at 685. Therefore, under *Mansell,* the Family Court of this state may divide only defendant's "disposable retired or retainer pay," as defined in the version of USFSPA in effect at the time the divorce decree was entered.

As quoted previously, the version of USFSPA in effect at the time of the divorce decree defined "disposable retired or retainer pay" as the total monthly retired or retainer pay to which the service member is entitled, less amounts which are withheld for federal, state, or local income tax purposes. 10 U.S.C. § 1408(a)(4)(C). In the case at bar, the government has been deducting the amount for federal income tax from defendant's retired pay prior to disbursement since 1991. The plaintiff receives one-half of the defendant's "disposable retirement pay" directly from the government, and must pay federal income tax on that amount. This amounts to a double-taxation of that portion of the defendant's military pension. We agree

with the plaintiff that this is an unfair result, but conclude that according to the law at the time of the decree, it is the correct result under the USFSPA, which under *Mansell* preempts state law, and limits the ability of the Family Court to divide military pensions in any way it may desire. We realize that this construction of the USFSPA may inflict economic harm upon former spouses. However, we are obliged to follow *Mansell* and conclude that the Family Court of this state may divide only the service member's "disposable retired pay" as defined under the version of the USFSPA in effect at the time the divorce decree was entered.

For these reasons, the defendant's appeal is sustained, the order of the Family Court is reversed, and the papers in the case are remanded to the Family Court for entry of judgment consistent with this opinion.

---

the end of the ninety-day period beginning on the date of the enactment of these amendments, the 1990 amendments do not apply to the decree.