CORTE *v.* CUCCHIARA, Executor of the Estate of Vita D. Salvia, ET AL.

[No. 257, September Term, 1969.]

*Decided February 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Howard E. Goldman,* with whom were *Audrey E. Melbourne* and *Stuart I. Schwartz* on the brief, for appellant.

*Stanley H. Kamerow* for appellee Frank Cucchiara, Executor of the Estate of Vita D. Salvia.

*James B. Carson,* with whom were *Felluca & Carson* on the brief, for appellees Vincenza Lo Iacono Arculeo, Giuseppe D'Orio, Sister Jsaia Vita Lombardo, Maria Pol-

izzi, Giuseppe D'Orio, Maria D'Orio, Giacoma D'Orio, Salvatore D'Orio, and Ignazio D'Orio.

HAMMOND, C. J., delivered the opinion of the Court.

The Orphans' Court for Prince George's County ruled that a husband, whose wife died five days before the Circuit Court signed a decree divorcing her absolutely on the ground of separation for the requisite period by mutual agreement, could not take a statutory share of her estate, and ordered distribution according to the terms of her last will which made no mention of the husband, naming her son as executor and bequeathing her estate to her nephews and nieces living in Italy. The Orphans' Court neither gave reason nor cited authority in support of its action. Counsel for those who take under the will urge that an Orphans' Court may invoke and exercise equitable principles and that this Orphans' Court regarded as done that which ought to have been done.

The legatees find a foundation from which to launch reliance on equitable maxims in the sequence of events in the divorce action. The bill was filed in December of 1967 in the Circuit Court for Prince George's County. After hearing testimony the Master for Domestic Relations Causes recommended on October 3, 1968, that the wife's prayer for an absolute divorce be granted. On October 14 the wife's lawyer mailed a proposed decree to the clerk for presentment to and signature by the judge. The clerk asked for a properly executed "Report of Absolute Divorce." This was furnished on November 1. On November 7 the clerk notified the wife's lawyer that because the testimony was over thirty days old, there would have to be compliance with the Seventh Circuit Rule S80 g (2) and Maryland Rule S74 b, requiring a military affidavit.

On November 8, counsel submitted a new proposed decree and a new affidavit. On November 10 the wife died suddenly and unexpectedly. On November 15, the court, unaware of her death, signed the decree of absolute di-

vorce. The nephews and nieces say, and the Orphans' Court apparently agreed, that the wife had established two days before her death that she was entitled to a divorce and under the equitable maxim they rely on, the decree signed five days after her death must be considered as relating back to two days before her death.

It is plain to us that the husband was still a husband, with all the marital rights of and in property thereunto appertaining when the wife died on November 10, and that the purported decree of divorce of November 15 was a nullity.

*McCurley, Ex'r v. McCurley*, 60 Md. 185, 189, 190, involved an application by a wife for a divorce. The husband died before a decree was passed. The Court said: "It is well settled that the death of either party to a divorce suit before decree, it being a personal action, abates the divorce proceedings; and this effect must extend to whatever is identified with those proceedings." This is the general rule.[1]

The Court in *McCurley* went on to say:

> "The situation of the wife is no longer the same after that it was before the death of her husband. * * * Upon his death before decree the suit abates. She is *eo instanti* simply then his widow, with the rights and liabilities as to his property which spring from her dower and thirds therein * * *."

This also is the general rule, the authorities holding that even after an interlocutory decree the death of either party to a divorce suit terminates the action and leaves the other party a surviving spouse with all the property rights of such a spouse.[2]

---

1. 24 Am.Jur.2d, Divorce & Separation, § 182; 2A Nelson, Divorce and Annulment (2d Ed.) § 19.09; Annot., Effect of death of party to divorce suit before final decree, 104 A.L.R. 654, supplemented in 158 A.L.R. 1205; *Simpson v. Simpson* (Va.), 175 S. E. 320, *cert. den.* 295 U. S. 735; *LeClerc v. LeClerc* (N. H.), 155 A. 249.

2. 23 Am.Jur.2d, Descent and Distribution §§ 129, 130; Annot., Interlocutory decree of divorce as affecting marital rights of one

There are some holdings that a decree which has been signed but not recorded before a death will be recorded after death and be effective from the time of signature, and some holdings that where under the controlling law an interlocutory decree automatically becomes final after a specified number of days, a ministerial failure to formalize or journalize the fact that that number of days has passed and the decree has become final will not operate to keep the parties from having been divorced as of the critical time. The case before us presents neither of these complications nor the possible complication of the presence of a proven marital fault which would justify an absolute divorce which was ungranted at the time of death.

In Maryland a decree has been said not to be effective unless reduced to writing, signed by the judge and filed for record. *Sellman v. Sellman*, 238 Md. 615, 618; *Kennedy v. Foley*, 240 Md. 615, 619. No decree was signed in the present case while the wife was alive and she died the wife of the appellant, who has the right and the standing to claim under Code (1957), Art. 93, § 329, a surviving spouse's share of her estate.

> *Order reversed, and case remanded for further proceedings.*

---

spouse in estate of another, 76 A.L.R. 284; *In re Crandall's Estate* (N. Y.), 89 N. E. 578; *Rollins v. Gould* (Mass.), 138 N. E. 815; *In re Chisholm's Estate* (Wash.), 294 P. 973; *Chivvis v. Chivvis* (Mo.), 184 A. 2d 773, 774; *In re Estate of Smith* (Dist. Ct. App.), 50 Cal. Reptr. 374.