383 A.2d 264.

Augustus S. Keidel *vs.* Eva V. Keidel.

MARCH 1, 1978.

Present: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J.   This is an appeal from a decision of the Family Court discontinuing a divorce proceeding in which Augustus S. Keidel and his wife Eva were each seeking a divorce one from the other. The heirs of Mr. Keidel have instituted this appeal, seeking to enforce certain property rights arising out of the divorce proceedings.

In October of 1973, Augustus S. Keidel married Eva V. Donahue. He was 78, and she was 58. Shortly thereafter (November 29, 1973) Augustus executed a deed conveying certain real estate from himself to himself and his new bride as joint tenants. Within 7 months of his marriage, in May of 1974, Augustus filed for divorce, alleging extreme cruelty and that the marriage was void or voidable as a matter of law. In July of 1974 he filed a complaint in the Superior Court, seeking a declaration that the November 29, 1973 deed was null and void and an order compelling Eva to convey her interest in the property to him. The Superior Court granted Eva's motion that the litigation be transferred to the Family Court. She also filed a cross-petition for divorce, alleging extreme cruelty and that the marriage was void or voidable by law.

The record makes apparent that the marital difficulties of this couple centered upon Eva's former marriage. Augustus claimed that Eva fraudulently misrepresented herself as a widow and thereby induced him to marry her and execute the deed transferring his property to her as joint tenants.

Augustus maintained that had he known Eva was, in fact, a divorcee, he never would have married her on account of his religious convictions. Eva maintains that prior to the nuptials Augustus was fully aware of her matrimonial status. Specifically, she claims that when the two filed for a marriage license, she informed the town clerk in Augustus' presence that she was a divorcee.

After a hearing, the Family Court denied the husband's petition for divorce and awarded a divorce to the wife on the ground of extreme cruelty. The decree appointed commissioners for the sale of the jointly owned property and provided that the net proceeds be divided equally between the parties. Alimony was permanently waived.

After the entry of the decree, but before it became final, Augustus died. The wife moved that the case be discontinued and all orders and decisions vacated, as the Family Court had no jurisdiction. Over the objections of the husband's heirs, the Family Court justice, in a thorough and well-reasoned opinion, granted the motion and dismissed the action.

The position of the heirs may be simply stated: Augustus' death did not abate the divorce action insofar as the interlocutory decree affected the property rights of the parties; therefore, the partition sale should proceed. The appellee contends that the death of a party to a divorce action abates the entire action, including all orders incidental thereto, and, therefore, the property should pass to her by right of survivorship.

The underlying cause of this dispute may be found in G.L. 1956 (1969 Reenactment) §15-5-23, which, at the time this case tried, read as follows:[1]

> "Remarriage — Final decree. — After final decree for divorce from the bond of marriage either party may

---

[1] In 1976, §15-5-23 was amended to provide for a 3-month waiting period. Public Laws 1976, ch. 338, §1. Otherwise, the statute remains the same.

marry again; but no decree for such divorce shall become final and operative until six (6) months after the trial and decision. Final decree from the bond of marriage may be entered ex parte and in chambers on the suggestion of the prevailing party at any time within thirty (30) days next after the expiration of six (6) months from the date of decision. After the expiration of said thirty (30) days, final decrees may be entered only in open court and on motion, notice of which shall be duly given; provided, however, that notice of the filing of said motion shall not be required in cases in which the original petition is unanswered."

The purpose of this statute is clear. It indicates a legislative intent to provide the parties, as a matter of public policy, with an opportunity for reconciliation and condonation. *Luttge* v. *Luttge*, 97 R.I. 309, 197 A.2d 500 (1964); *Pakuris* v. *Pakuris*, 95 R.I. 305, 186 A.2d 719 (1962); *McLaughlin* v. *McLaughlin*, 44 R.I. 429, 117 A. 649 (1922); *Berger* v. *Berger*, 44 R.I. 295, 117 A. 361 (1922). Any marriage entered into within the 6-month period is void, for the parties remain husband and wife throughout that period. *Holgate* v. *United Electric Railways*, 47 R.I. 337, 133 A. 243 (1926). The prevailing party must, throughout the waiting period, conduct himself or herself, as the case may be, as a faithful spouse until the entry of the final decree. *Pakuris* v. *Pakuris*, 95 R.I. at 309, 186 A.2d at 721.

Although this court has apparently never decided this issue, it is universally accepted that, divorce being a personal action, the death of one of the parties before the entry of the final decree thereon abates the action. *Corte* v. *Cucchiara*, 257 Md. 14, 261 A.2d 775 (1970); *Stritch* v. *Stritch*, 106 N.H. 409, 213 A.2d 426 (1965); 2A Nelson, *Divorce and Annulment* §19.09 (rev. ed. 1961). *See Lynch* v. *Lynch*, 83 A. 403 (R.I. 1912). There is general authority in support of the proposition that interlocutory decrees may be given force and effect insofar as they adjudicate property rights, even after the death of one of the parties. 3 Nelson, *Divorce*

*and Annulment* §27.10 (2d ed. 1945). An analysis of the case law, however, does not necessarily lead to such a broad formulation. In some jurisdictions the result is mandated by the statutory framework. *McClenny* v. *Superior Court*, 62 Cal. 2d 140, 396 P.2d 916, 41 Cal. Rptr. 460 (1964) (interpreting Cal. Civ. Code §132 (West 1954), now Cal. Civ. Code §4514 (West 1970)). In other cases the court is simply preserving the statutory right of the executor or heirs to appeal the original decree. *Libby* v. *Libby*, 23 Ore. App. 223, 541 P.2d 1077 (1975); *Sarno* v. *Sarno*, 28 Colo. App. 598, 478 P.2d 711 (1970). In some cases the "property rights" which are said to survive the death of one of the parties related to nothing more than the attorneys' fees. *Kay* v. *Vaughan*, 224 Ga. 875, 165 S.E.2d 131 (1968); *Williams* v. *Williams*, 59 N.J. 229, 281 A.2d 273 (1971).

In contrast, there is substantial authority to the effect that the death of one of the parties abates the entire divorce action, including all ancillary or interlocutory decrees, orders, etc. *Saunders* v. *Hanson*, 327 F.2d 889 (D.C. Cir. 1963); *Butler* v. *Hicks*, 229 Ga. 72, 189 S.E.2d 416 (1972); *Williams* v. *Williams*, 146 Neb. 383, 19 N.W.2d 630 (1945); *Daly* v. *Daly*, 533 P.2d 884 (Utah 1975); *McPherson* v. *McPherson*, 200 WAsh. 365, 93 P.2d 428 (1939). In *McPherson*, for example, a wife died shortly after an interlocutory decree of divorce settled the property rights of the parties. Stressing the fact that the power to adjudicate property rights, including the power to partition property, was ancillary to the main purpose of a divorce action, the court ruled that the interlocutory decree becomes a nullity "in its entirety" when one of the parties dies. *Id.* at 371, 93 P.2d at 430.

The experience of Utah in this regard is worth noting. For a long time Utah followed the bifurcated approach: the interlocutory decree would abate insofar as it determined the marital status of the parties, yet it would remain effective insofar as it adjudicated property rights. *In re Harper's*

*Estate,* 1 Utah 2d 296, 265 P.2d 1005 (1954). Recently, however, the Supreme Court of Utah reversed *Harper* and ruled that the interlocutory decree should be ineffective and of no further force or effect upon the death of one of the parties.

> "[T]he Harper decision was impractical and unreasonable, in splitting an action to nullify its basic and most important aspect — that of *divorce,* but sanctify property rights which without the marriage, never would have existed." *Daly* v. *Daly,* 533 P.2d at 886, n.7.

Despite the wisdom of these respective positions, our ultimate decision must be based upon the Rhode Island statutes defining the jurisdiction and power of the Family Court. The Family Court is a statutory court of special jurisdiction. *State* v. *Zittel,* 94 R.I. 325, 180 A.2d 455 (1962). Its authority to act in a given case, if it exists, must be contained within the Family Court Act. *Rogers* v. *Rogers,* 98 R.I. 263, 268, 201 A.2d 140, 143 (1964). The power of the Family Court to partition real estate is contained in §8-10-3. The court is empowered to hear and determine

> "all motions for allowance, alimony * * * and other matters arising out of petitions and motions relative to real and personal property in aid thereof, including, but not limited to, partitions * * * and such other equitable matters arising out of the family relationship, wherein jurisdiction is acquired by the court by the filing of petitions for divorce * * *."

In interpreting the phrase "in aid thereof," we have made clear that the Family Court's jurisdiction over the real and personal property of the parties is "ancillary" and an "adjunct to its divorce jurisdiction." *Rogers* v. *Rogers,* 98 R.I. at 268-69, 201 A.2d at 143-44. The court's power to partition real estate is exercisable only in those instances where

divorce or separation proceedings have been commenced. *Fox* v. *Fox*, 115 R.I. 593, 598, 350 A.2d 602, 604 (1976).

The heirs have conceded that Augustus' death abated the divorce action. They maintain, nevertheless, that the interlocutory decree should be enforced insofar as it orders a partition sale of the real estate with a division of the proceeds between the parties. We believe the Family Court justice correctly held that he had no jurisdiction to continue a divorce action after the death of one of the parties. An interlocutory decree to partition real estate, being ancillary to the court's divorce jurisdiction, must abate when the divorce action itself abates.[2]

A further reason why the interlocutory decree cannot be enforced may be found in §15-5-23 which, as noted above, prescribes a cooling-off period before a divorce decree can become "final and operative." If the purpose of this period is to provide an opportunity for reconciliation and condonation, then the interlocutory decree ought not to finally or conclusively determine the property rights of the parties. If the matrimonial bond remains preserved throughout this waiting period, then so should the property rights which each may have in the estate of the other. We hold that the

---

[2]In so holding, we necessarily reject the contention that G.L. 1956 (1969 Reenactment) §34-15-12 is applicable in divorce actions. That statute provides:

"Death of party — Substitution of heirs or devisees. — No action for partition shall be abated by the decease of either of the parties plaintiff or defendant in such action. In case of the decease of either of the plaintiffs or defendants in such action, the court shall cause the heirs at law or devisees of such deceased party to be notified of the pendency of such action in the same manner as if they had been parties in the original action, and may, after such notice shall have been given, render judgment in such action in the same manner as might have been done had such heirs or devisees been original parties in such action."

That section, as with all of chapter 15 of title 34, applies to partition actions commenced on the Superior Court. While many of the provisions of chapter 15 of title 34 may be employed to govern partition proceedings initiated in the Family Court, §15-34-12 cannot be construed so as to continue the jurisdiction of the Family Court over ancillary matters once the divorce action has been abated.

joint tenancy of the parties was not severed by the interlocutory decree but remained in full force and effect throughout the interlocutory period up until the death of the appellee's husband, at which time the property passed by right of survivorship. In taking this position, we hasten to add that unquestionably there have been and will be times when, during the period between the entry of the interlocutory and final decrees of divorce, a severance of a joint tenancy can be effectuated. This can come about when the commissioner has been appointed and the decree approving the commissioner's sale or division of the couple's real estate has been entered in the Family Court. *See* §§34-15-21 and 34-15-27.

The heirs' appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remitted to the Family Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Joseph G. Miller, James P. Quirk*, Executor under Will of Augustus S. Keidel, for Appellants, (Heirs of Augustus S. Keidel).

*Kirshenbaum & Kirshenbaum, Alfred Factor*, for Appellee.