Alice **CENTAZZO**

v.

Frank **CENTAZZO.**

No. 83–568–Appeal.

Supreme Court of Rhode Island.

May 28, 1986.

Maurice W. Hendel, Pawtucket, for plaintiff.

Louis DeSimone, Jr., Brosco & Brosco, Providence, for defendant.

## OPINION

SHEA, Justice.

This case comes before us on appeal from a judgment entered in the Family Court awarding a divorce to Alice Centazzo (wife) on the grounds of irreconcilable differences that caused the irremediable breakdown of the marriage. The cross-petition for divorce filed by Frank Centazzo (husband) was also granted on the same grounds. The husband's interest in the marital domicile was awarded to the wife as well as certain other property pursuant to the Rhode Island equitable-distribution statute, G.L. 1956 (1981 Reenactment) § 15–5–16.1, as amended by P. L. 1982, ch. 403 § 1. The trial justice also awarded alimony to the wife. The husband appeals from the trial justice's assignment of the marital domicile. We affirm.

The husband and the wife were married on May 26, 1945. During their thirty-eight-year marriage they had four children, all of

whom are now adults. On October 22, 1976, the wife filed a petition for divorce in Family Court on the grounds of extreme cruelty and irreconcilable differences. The court granted her motion for support from her husband and the exclusive use of the marital domicile in Bristol, Rhode Island, and the household furnishings. On January 9, 1981, the husband filed a cross-petition for divorce on the grounds of irreconcilable differences.

At trial, the wife testified about her husband's associations with other women, his indifference to her, and his frequent absences from their home. He, in turn, testified about his wife's drinking problem, and her decision to sleep in a separate bedroom from 1972 until 1976, at which time he moved out of the home permanently. He also claimed that she had refused to have marital relations with him, which the wife, however, denied. The trial justice described their disintegrating relationship by saying that "the fire went out of this marriage many years ago."

The wife, her sister, and one of the children also testified that she was the primary caretaker for the children and maintained the household. She performed all of the cooking and cleaning duties. In addition, she worked throughout the course of the marriage as a waitress, a sales clerk, a jewelry piece worker, and a teacher. At the time of the trial she was earning a weekly net wage of approximately $111.

The husband was not closely involved with the day-to-day activities of the family or the raising of the children. He acknowledged that he was involved in a number of organizations, which required him to attend evening meetings. At one point he recalled that he was attending meetings "almost three or four nights a week."

The husband's financial picture was quite different from that of his wife. After a business of his own had failed in the early 1950s, he went to work for the state. At the time of trial he was working as the assistant director of the Department of Elderly Affairs and was earning a net bi-weekly salary of $797.02. Unlike his wife who had no other assets, the husband had assets that included the house he is presently living in, which was acquired after he moved out of the marital domicile, pension funds, a $6,000 certificate of deposit, a savings account, a checking account with approximately $1,500 in it, and a year-old automobile valued at over $10,000.

After granting both parties' petitions for divorce, the trial justice then reviewed the evidence and addressed the question of equitable distribution. He found that the marital domicile had been a joint acquisition. He then specifically found that

"[although the husband had been the more substantial income-producer,] there is also no question that his wife worked besides taking care of the children, besides taking care of the food, the house and the contributions and services of a mother and rearing of the children. * * * [C]ertainly, since 1976, [the responsibility for] preservation of this asset has * * * fallen four square on the shoulders of [the wife]. [The husband] has gone off and is living with another woman in another piece of real estate. * * * [A]t least since 1976, she has been the one responsible for the preservation and appreciation of the asset. When one takes a look at the conduct of the parties, * * one would see almost the same disparity, at least of recent years, that one does when we look at the assets vis-a-vis each other."

The trial justice then assigned the marital domicile in Bristol to the wife and awarded the Warwick house to the husband. In making these awards, the trial justice commented that this distribution was the only equitable manner in which this property could be assigned and the only way "this woman will be able to live out a fair and happy and equitable life, given the tremendous disparity of income between Mrs. and Mr. Centazzo." The trial justice then considered and awarded alimony to the wife.

■ Our equitable-distribution statute, § 15–5–16.1, sets forth four factors that

must be considered by a trial justice in assigning marital property. These factors are "(1) the length of the marriage; (2) the conduct of the parties during the marriage; (3) the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates; and (4) the contribution of either party as a homemaker." *D'Agostino v. D'Agostino,* 463 A.2d 200, 201 (R.I. 1983). These criteria are designed to aid the trial justices in their consideration of the quality of the marital assets as well as each spouse's contribution to the value of the marital property. This court has emphasized that the needs of a spouse are not to be considered in the assignment of property. *Sattari v. Sattari,* 503 A.2d 125 (R.I. 1986); *D'Agostino v. D'Agostino,* 463 A.2d 200 (R.I. 1983).

It is clear from a review of the record that in assigning the marital property, the judge considered only the relevant factors and was not influenced by the relative needs of the parties. In his decision, the trial justice discussed the factors set forth in the equitable-distribution statute and made his assignment relying on these considerations. The court considered the length of the marriage, the contribution of both parties to the marriage, as well as each party's conduct. He specifically found that the husband's association with another woman and his failure to observe his marital obligation were relevant to the assignment of property, as well as finding that the responsibility for preserving the marital domicile had fallen "four square" on the wife's shoulders. He also found that the wife had been primarily responsible for the preservation and appreciation of this asset. Although the trial justice did comment that this assignment was the only equitable way to allow the parties to live given the tremendous disparity of income between them, we are satisfied that his distribution of the marital assets was based solely on his consideration of the relevant factors and not on any consideration of the parties' unequal economic positions. It is well settled that, on review by this court, a

trial justice's findings will not be disturbed unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Sattari v. Sattari,* 503 A.2d 125 (R.I. 1986); *Alix v. Alix,* 497 A.2d 18 (R.I. 1985). Our review of the record discloses that the trial justice did not overlook relevant evidence on any material issue, nor was he otherwise clearly wrong.

The husband also asserts that the assignment of the marital property was not equitable. We have recognized that

"property division is based on the joint contribution of the spouses to the marital enterprise and rests on the concept that nonmonetary as well as monetary contributions may enhance the marital partnership. Property division recognizes the essential supportive role played by a spouse who is not employed outside the home, acknowledging that as a homemaker and childrearer such spouse is entitled to a share of the family assets." *Wordell v. Wordell,* 470 A.2d 665, 667 (R.I. 1984).

It is within the trial justice's discretion, subject to the criteria set forth in the equitable-distribution statute, to effect a just and fair property division between the parties. *Wordell v. Wordell,* 470 A.2d 665 (R.I. 1984). This trial justice's findings were tailored to all of the relevant criteria, and the findings support the property assignment to the wife. The trial justice acted well within his discretion in the distribution of the marital assets.

■ The husband further maintains that the trial justice erred in considering the Warwick residence as part of the marital estate. He argues that the status of the parties, at the time that property is acquired, must be considered in determining whether it is a marital asset. He suggests that because he acquired this residence both after a petition for divorce had been filed and after he had moved out of the marital home, his status had changed with respect to his wife and the property.

"We recognize and reaffirm that our cases hold that parties to a divorce action remain as husband and wife until the entry of the final decree of divorce * * * ." *Alix v. Alix,* 497 A.2d at 20. The filing of a divorce petition or the moving out of the marital home by one spouse certainly will not act to change the marital relationship or have any effect on the applicability of the equitable-distribution statute. Section 15–5–16.1 specifically excludes from the marital estate only two specific types of property, that property which a spouse brings into the marriage and/or that property which a spouse may receive by way of inheritance. It is a rule of statutory construction that an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed. *Murphy v. Murphy,* 471 A.2d 619 (R.I. 1984). *See generally* 2A Sands, *Statutes and Statutory Construction* § 47.23 (4th ed. 1973). In this case it is clear that § 15–5–16.1 excludes only the two specific types of property from the marital estate enumerated therein. Because of the fact that the marital relationship remains in force until dissolved by a final decree and because property acquired after a petition for divorce is filed or property acquired after one spouse leaves the marital home is not specifically excluded by the statute, such property is subject to equitable distribution.

■ The husband lastly argues that the Warwick residence that he acquired after moving out of the marital home was incorrectly valued by the court. This argument is wholly without merit. The trial justice in his decision noted the present fair-market value of the property as testified to by the husband himself. This testimony constituted a stipulation as to value and removed the question of value from controversy. *Wordell v. Wordell,* 470 A.2d 665 (R.I. 1984). The trial justice also noted that only a $4,500 down payment was made on the

house. The record also indicates that there was a mortgage on the property of approximately $23,960 and the fair-market value was estimated at $30,000. It is clear that at the time that the trial justice was distributing the marital property, he was well aware of the value of all of the marital assets and the extent to which they were encumbered. We have reviewed the contentions made by the husband and find them to be without merit.[1]

For these reasons stated, the husband's appeal is denied and dismissed and the judgment of the Family Court is affirmed. The papers in the case may be remanded to the Family Court.

---

1. Although the awarding of open-ended alimony was not challenged on appeal, we note that this court has adopted the concept of alimony as a *rehabilitative* tool to provide temporary support for a former spouse, based on need. *Casey v.* *Casey,* 494 A.2d 80 (R.I. 1985); *Fisk v. Fisk,* 477 A.2d 956 (R.I. 1984); *D'Agostino v. D'Agostino,* 463 A.2d 200 (R.I. 1983). Because the open-ended alimony award was not challenged, however, we shall not address its propriety.