Nagib GIHA

v.

Nelly GIHA.

No. 91–186–A.

Supreme Court of Rhode Island.

June 4, 1992.

Jeremiah Leary, Leary & Holland, Tiverton, for plaintiff.

Christopher Long, Long & Silvia, Fall River, Mass., for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the defendant, Nelly Giha (the wife), from a judgment of the Family Court dismissing her complaint for post final judgment relief. The wife urged the Family Court to vacate its final judgment of divorce, arguing that the Massachusetts State Lottery (lottery) prize acquired by the plaintiff, Nagib Giha (the husband), is a marital asset and is subject to equitable distribution. The trial justice dismissed the wife's complaint and determined that the parties' property rights were finally adjudicated upon the issuance of the interlocutory order. For the reasons discussed herein, we reverse that portion of the trial justice's decision concerning the lottery prize.

On October 7, 1987, the husband filed a complaint for divorce on the grounds of irreconcilable differences. The trial began on May 20, 1988. During a recess on the first day of trial the parties reached an agreement for the disposition of their property. Both parties testified that the husband would retain the future income from his medical practice from May 20, 1988, the date of the trial. The parties also agreed to divide equally the net proceeds from the sale of their marital assets. On May 31, 1988, the Family Court entered a decision pending entry of final judgment confirming the parties' agreement reached at trial.

On December 25, 1988, the husband learned that he had won the MEGABUCKS game. His winning lottery ticket was worth approximately $2.4 million, payable over twenty years at $120,000 per year. The husband waited until October 6, 1989, to claim his prize from the Massachusetts State Lottery Commission. He testified that he delayed claiming his prize for

health reasons and because he was trying to liquidate his medical practice.

On April 27, 1989, six months prior to the husband's claiming his prize, the Family Court entered its final judgment severing the parties' marriage. The wording of the final judgment was slightly different from the interlocutory order. The final judgment stated that "[c]ommencing as of May 20, 1988, all income of Plaintiff shall be the sole property of Plaintiff."

In December 1990 the wife filed a complaint for post final judgment relief pursuant to Rule 64A of the Rules of Procedure for Domestic Relations. She argued that the husband committed fraud by failing to disclose his lottery prize to her and to the Family Court. The wife asserted that the $2.4 million lottery prize was a marital asset since the husband won the prize during their marriage and that the prize should be divided equally between the parties.

After a hearing the trial justice determined that he had the inherent power to adjudicate the wife's claim of fraud; however, he dismissed the wife's complaint. The trial justice concluded that an individual need not update information on a change in his or her financial circumstances after the trial concludes. Therefore, the trial justice determined that the husband had not committed fraud by failing to disclose his lottery prize. The justice stated that the interlocutory order equitably dividing the assets severs "the economic ties between the parties." He reasoned that since the husband purchased the lottery ticket after the issuance of the interlocutory order, the lottery prize was not a marital asset and therefore belonged solely to the husband. The trial justice suggested that although the parties remained legally married until the entry of the final judgment, public policy required an end to litigation once the property rights of the parties were adjudicated.

■ On appeal the husband argues that Rule 64A "does not authorize a post final judgment complaint to modify a final order of equitable assignment." The wife asserts that the husband had an obligation to disclose his lottery prize to her and to the court and that he committed fraud by failing to so disclose. She argues that she properly filed her complaint for post final judgment relief pursuant to Rule 64A. Alternatively the wife contends that Rule 60(b) of the Rules of Procedure for Domestic Relations gives the Family Court the inherent power to hear her claim.

Subsection (b) of Rule 64A refers to "[c]omplaints for modification of alimony or support obligations." The reporter's notes following Rule 64A state that the rule "is designed to deal with proceedings that frequently occur subsequent to entry of a judgment granting a divorce or separation and containing alimony, support, or custody and visitation."

We do not believe that Rule 64A affords an individual the type of relief sought in the present case. The Family Court awarded the wife alimony, beginning May 28, 1988, for a period of two years. In December 1990, when the wife filed her complaint, the husband did not have a continuing obligation to pay alimony or support to the wife. Therefore, there was no alimony obligation to modify. It is clear from the language of the statute and the reporter's notes that the Legislature did not intend for Rule 64A to be used as a method of modifying an alimony obligation that no longer exists.

■ The trial justice properly concluded that he had the inherent power to adjudicate the wife's claim of fraud. In *In re Lisa Diane G.*, 537 A.2d 131 (R.I.1988), we concluded that the Family Court had jurisdiction to hear a complaint brought by adoptive parents seeking nullification of an adoption decree on the grounds that the Department for Children and Their Families had committed fraud. We noted that Rule 60(b) did not restrict the court's power to adjudicate an independent action seeking to obtain relief from a judgment resulting from fraud. 537 A.2d at 133. We concluded that the adoptive parents could use an independent civil action to "seek the identical relief that could not be afforded by Super.R.Civ.P. 60(b) [a rule identical to R.P.Dom.Rel. 60(b)] because of its one-

year limitation." 537 A.2d at 133. The Family Court has exclusive jurisdiction over adoptions; therefore, it had the inherent authority to decide the claim asserted by the adoptive parents.

■ Relying upon the reasoning enunciated in *In re Lisa Diane G.,* we conclude in the present case that the trial justice had jurisdiction to hear the wife's complaint for post final judgment relief. The wife's complaint sought to obtain relief from the equitable-distribution order that the wife believes derived from the husband's fraud. Rule 60(b) provides for the type of relief sought by the wife; however, the wife failed to meet the one-year limitation contained in Rule 60(b). Despite the fact that it bears the same number as the original divorce case, the trial justice treated the present case as a separate and independent civil action. The Family Court has exclusive jurisdiction in the area of division of marital property. Therefore, we conclude that the trial justice had the inherent power to adjudicate the wife's claim and properly denied the husband's motion to dismiss.

■ The wife argues that the trial justice erred in dismissing her complaint. She contends that the husband's lottery prize, won prior to the entry of the final judgment, is a marital asset subject to equitable distribution. The husband argues that the equitable-distribution statute contemplates assignment of only those assets that existed at the time of trial. We disagree with the husband's argument.

General Laws 1956 (1988 Reenactment) § 15–5–16.1 governs the distribution of marital assets by the Family Court. The statute is intended "to provide a fair and just assignment of the marital assets * * * on the basis of the joint contribution of the spouses to the marital enterprise." *Stanzler v. Stanzler,* 560 A.2d 342, 345 (R.I. 1989). Section 15–5–16.1, with the exception of several statutory exemptions, provides for an equitable distribution of all property owned or acquired by either spouse during the marriage.

Although this court has not previously had the opportunity to address the issue presented by this case, we have established that the "parties to a divorce action remain as husband and wife until the entry of the final decree of divorce." *Alix v. Alix,* 497 A.2d 18, 20 (R.I.1985); *see Vanni v. Vanni,* 535 A.2d 1268, 1270 (R.I.1988); *Centazzo v. Centazzo,* 509 A.2d 995, 998 (R.I.1986) (quoting *Alix v. Alix,* 497 A.2d at 20). In both *Vanni* and *Centazzo* we concluded that assets acquired by a spouse after the parties had separated or after a complaint for divorce had been filed were subject to equitable distribution. *Vanni,* 535 A.2d at 1270; *Centazzo,* 509 A.2d at 998. "[T]he acquisition of assets after the irremediable breakdown of a marriage or after a valid complaint for divorce is filed *or at any time before final decree for divorce is granted* will not have any effect on the applicability of the equitable-distribution statute." (Emphasis added.) *Vanni,* 535 A.2d at 1270.

In *Keidel v. Keidel,* 119 R.I. 726, 383 A.2d 264 (1978), we considered the effect of a spouse's death during the waiting period between the interlocutory order and the final judgment. We determined that the ninety-day waiting period affords the parties an opportunity for reconciliation and condonation. The interlocutory decree does not conclusively establish the parties' property rights. *Id.* at 732, 383 A.2d at 267. Because the matrimonial bonds were preserved throughout the ninety-day period, "then so should the property rights which each [spouse] may have in the estate of the other." *Id.*

■ In the present case the husband won the lottery prize four months before the Family Court entered its final judgment. The parties remained as husband and wife until the entry of the final judgment in 1989. The mere fact that the husband won the lottery prize after the Family Court issued an interlocutory order does not affect the applicability of the equitable-distribution statute. The interlocutory order did not sever either the matrimonial or the economic ties between the husband and the wife. Because the parties' marriage remained in effect throughout the waiting period, so did the property rights each spouse had in the property acquired by the

other spouse during that period. Therefore, since the husband won the $2.4 million lottery prize during the existence of the parties' marriage, we conclude that the prize is a marital asset and is subject to the equitable-distribution statute. Because we hold that all property acquired prior to the entry of the final judgment, which property is not excluded in § 15–5–16.1, is subject to equitable distribution, we conclude that the parties to a divorce action have a continuing duty to provide information about changes in their financial condition until the entry of a final judgment of divorce.

In his decision the trial justice noted that "as of the May hearing date, all income received by Dr. Giha thereafter would be his sole property." However, at the time the husband obtained the right to the payment of the lottery prize the interlocutory order was still in effect. The interlocutory order stated that the husband retained only the future income from his medical practice. The $2.4 million lottery prize cannot be classified as income from his medical practice.

The trial justice also suggested that "public policy requires that there must be an end to litigation once the court adjudicates the [parties'] property rights * * * [t]o do otherwise would subject our [judicial] system to chaos by a continual uncertainty of judgments." We disagree with the notion that our decision in the present case will cause "continual uncertainty." Litigation ends, and the parties' property rights in marital assets become final and conclusive upon the issuance of the final judgment. When considering whether to enter a final judgment, the trial justice will determine if the parties have acquired marital assets during the statutory waiting period. If the parties have acquired such marital assets, the trial justice will decide whether to alter the alimony or the equitable assignment established by the interlocutory order. The judge will then enter a final judgment, thereby severing the matrimonial and economic ties of the spouses.

On review we shall not disturb a trial justice's findings unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. In the present case our review of the record indicates that the trial justice misconceived the nature of the lottery prize.

Our decision here does not entitle the wife to any portion of the lottery prize. On remand the Family Court will consider the factors contained in § 15–5–16.1 and determine what, if any, equitable rights the wife has in the lottery prize. We hold only that the trial justice erred in failing to conclude that the lottery prize was a marital asset and whether the wife was entitled to a portion thereof.

For the reasons stated herein, the wife's appeal is sustained. The judgment appealed from is reversed. For purposes of re-examination of the equitable distribution, the papers in the case are remanded to the Family Court with our decision endorsed thereon.